UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:12-cv-23850-MGC/TURNOFF

STONECREEK – AAA, LLC,
a Georgia Limited Liability Company,

        Plaintiff,

v.

WELLS FARGO BANK N. A.,
a National Banking Association,

        Defendant.
_____/

### MOTION TO DISMISS WITH PREJUDICE AND FOR SANCTIONS

**(For Fabrication of Evidence & Fraud on the Court)**

Pursuant to S.D. Fla. L.R. 7.1, Defendant Wells Fargo Bank, N.A. ("Wells Fargo") files this Motion to Dismiss Plaintiff Stonecreek – AAA, LLC's ("Stonecreek") Amended Complaint in this cause with prejudice, on the grounds that Stonecreek has fabricated evidence in an effort to perpetrate a fraud on the court and Wells Fargo. Wells Fargo also seeks an Order requiring Stonecreek to reimburse Wells Fargo for all attorneys' fees and costs incurred in defense of this matter. In support of this motion, Wells Fargo states:

### I.    Introduction

This action arises from a failed attempt by former Stonecreek principal, Alfred Socorro ("Socorro"), to obtain a HUD insured loan from Wells Fargo to finance the purchase and renovation of the Stone Creek Apartments in Atlanta, Georgia. [DE 16, ¶¶ 5-6] The essence of Stonecreek's lawsuit is that Wells Fargo allegedly breached a contractual obligation to process

and submit an application for mortgage insurance to the FHA, and to arrange for placement of the resulting loan. [DE 16, ¶ 10-11, 15-17]

Attached as <u>Exhibits A and B</u> to Stonecreek's Amended Complaint are the two key documents upon which Stonecreek's claims against Wells Fargo are predicated: (1) an "Engagement Letter" between Soccoro and Wells Fargo that purports to be signed by Socorro and former Wells Fargo employee Wendy Melton ("Melton"); and (2) an Assignment of the Engagement Letter from Socorro to Stonecreek. It is apparent following sworn deposition testimony from both Socorro and Melton that both the Engagement Letter and Assignment were fabricated by someone on Stonecreek's behalf, with forged signatures, to support Stonecreek's claims against in this action.

As discussed below, Socorro has confirmed under oath that: (1) the signatures on the Engagement Letter and Assignment are not his; (2) he did not authorize anyone to sign his name on his behalf; (3) he was unaware that someone has signed his name on the documents; (4) he had not seen these documents prior to receiving Wells Fargo's deposition subpoena in this case; (5) his purported signatures on the Engagement Letter and Assignment are forgeries, and (6) he is "disappointed" to learn that his signatures were forged. Melton has also rejected her purported counter-signature on the Engagement Letter during her deposition, and Wells Fargo has no record of receiving a copy of the Engagement Letter and Assignment attached to Stonecreek's Amended Complaint prior to this action. Because Stonecreek has attempted to perpetrate a fraud on this court by bringing an action based upon false and fabricated evidence, and to protect the sanctity and integrity of these judicial proceedings, this lawsuit should be dismissed with

prejudice. Stonecreek should also be required to reimburse Wells Fargo for all attorneys' fees and costs incurred in this matter.[1]

## II. Background

After its principals Socorro and Bucelo first withheld and misrepresented material information that adversely impacted their credit and ability to secure the loan at issue,[2] Stonecreek has now resorted to fabricating key evidence in an effort to substantiate its claims and defraud the court. Socorro and his then partner, Bucelo, created Stonecreek, a Georgia limited liability company, as a single purpose entity to eventually hold title to the Stonecreek property after the acquisition. Bucelo is a sophisticated businessman who has also been an attorney since 1979. The resume Bucelo provided to Wells Fargo is attached as Exhibit A to this motion.

In connection with the loan application, Socorro and Wells Fargo embarked on a complex due diligence process between September of 2008 and May of 2009. However, Socorro and Bucelo ultimately never obtained a loan from Wells Fargo, and therefore were unable to acquire the subject property. The relationship between the parties terminated in May of 2009, after HUD indicated in advance that it would not approve the application for numerous reasons, including market conditions and noise, and after Wells Fargo discovered that Socorro and Bucelo had concealed their adverse lawsuit histories, one of which was filed against Mssrs. Socorro and

---

[1] The lone remaining principal of Stonecreek, and apparently the only person with a financial stake in this action, is Socorro's former partner, Armando Bucelo ("Bucelo"). Bucelo appeared for deposition in this action as Stonecreek's Rule 30(b)(6) representative.

[2] It is with great irony that Stonecreek also brings fraud related claims against Wells Fargo in this action. In addition to the forgeries and fraud on the Court addressed in this motion, Wells Fargo discovered during the application process that Socorro and Bucelo were defendants to prior lawsuits, which were not disclosed to Wells Fargo as required (and were in fact concealed), and which materially impacted the prospects for HUD's and Wells Fargo's approval of a loan for the Stonecreek project.

Bucelo during the application process. Relevant portions of Mr. Sullivan's deposition are attached as Exhibit B to this motion. [Sullivan Dep. 226:21-232:5; 265:5-267:8]

In 2011, Bucelo decided to sue Wells Fargo over the unconsummated loan transaction. Socorro did not want to be involved in the suit, and withdrew his ownership interest in Stonecreek. Relevant portions of Mr. Bucelo's deposition are attached as Exhibit C to this motion. [Bucelo Dep. 65:13- 68:19, Sept. 4, 2013]

Bucelo then retained his current litigation counsel, Jeffrey P. Shapiro, Esq. and the law firm of Shapiro Ramos, P.A., to send a May 19, 2011, demand letter to Wells Fargo ("Demand Letter"). The Demand Letter attached a copy of an Engagement Letter signed by Socorro that differed from the version that is attached to Stonecreek's Amended Complaint (the "Partially Executed Engagement Letter"). Relevant portions of Mr. Socorro's deposition are attached as Exhibit D to this motion. [Socorro Dep. 83:10-95:15] The Demand Letter enclosing the Partially Executed Engagement Letter is attached as Exhibit E to this motion. The forged Engagement Letter, which is also attached as Exhibit A to Stonecreek's Amended Complaint, is attached as Exhibit F to this motion, along with a clearer copy from Plaintiff's production.

As noted, Socorro initialed each page of the Partially Executed Engagement Letter, and in his handwriting changed a material term that would have reduced Wells Fargo's Financing Fee by one-half. [Exhibit D, Socorro Dep. 89:20-90:2; 91:4-91:9][Exhibit E] Socorro signed the document with this material change and returned it to Wells Fargo. *Id*. Importantly, the Partially Executed Engagement Letter bears the fax information at the top of the page showing that it was received from Wells Fargo. *Id*. Relevant portions of Ms. Melton's deposition are attached as Exhibit G to this motion. [Melton Dep. 21:7-21:19]

There is clear and convincing evidence that, faced with a Partially Executed Engagement Letter, Stonecreek simply fabricated a new Engagement Letter with forged signatures of Socorro and Melton, and likewise forged Socorro's signature on an Assignment in an effort to give Stonecreek alleged rights under the Engagement Letter. The Engagement Letter attached to Stonecreek's pleadings also lacks Wells Fargo fax lines, which would have been present had the document been signed by Ms. Melton. [Exhibit G, Melton Dep. 156:23-157:9] The filed Engagement Letter also lacks the handwritten changes that Socorro made to the Financing Fee, which are present in the version attached to Stonecreek's Demand Letter. The filed Engagement Letter also has no initials on each page, which are present in the version attached to the Demand Letter. Compare Exhibit E to Exhibit F.

The last page of the filed Engagement Letter purports to contain Socorro's and Melton's signatures. Exhibit F. As noted, Socorro confirmed under oath in his videotaped deposition that the signatures on the Engagement Letter and Assignment are not his, that he did not authorize anyone to sign his name on his behalf, that he was unaware that someone has signed his name on the documents, that he had not seen these documents prior to receiving Wells Fargo's deposition subpoena in this case, that his purported signatures on the Engagement Letter and Assignment are forgeries, and that he was "disappointed" to learn of these forgeries. [Exhibit D, Socorro Dep. 82:3-86:21] Former Wells Fargo employee Melton likewise rejected her purported counter signature on the Engagement Letter. [Exhibit G, Melton Dep. 156:2-157:23; 164:15-165:21] Wells Fargo also has no record of receiving a copy of the forged Engagement Letter and Assignment attached to Stonecreek's pleadings.[3]

---

[3] Wells Fargo only had a copy of the Partially Executed Engagement Letter in its files, and was unaware of the forged Engagement Letter and Assignment prior to the filing of this lawsuit.

The forged signatures of Socorro and Melton on the filed Engagement Letter are clearly traced, and badly at that, with gaps and spaces in the signatures where the pen appears to have been lifted off of the paper:

Melton's <u>actual</u> signature on an initial letter sent to Stonecreek, which was identified by the witness is:

Sincerely,

[signature: Wendy Melton]

Wendy Melton
Vice President

Melton's purported (forged) signature on the filed Engagement Letter, which she disclaims, is as follows:

ACCEPTANCE

[signature: Wendy Melton]

Wells Fargo Bank, N.A.

_____
Date

Socorro's <u>actual</u> signature on the Partially Executed Engagement Letter attached to Stonecreek's Demand Letter is as follows:

[signature]
Borrower
ALFREDO Socorro.

Socorro's purported (forged) signature on the filed Engagement Letter, which Socorro has rejected under oath, is as follows:

[signature]
Borrower

_____

6

Stonecreek had another hurdle to overcome when contemplating a lawsuit against Wells Fargo -- it was not named as a party to the Engagement Letter, and therefore lacked standing to sue. Socorro is the named party to the Partially Executed Engagement Letter, but he wanted no part in the litigation Bucelo was contemplating against Wells Fargo. Again undaunted, Stonecreek also fabricated the Assignment of Engagement Letter attached as Exhibit B to Stonecreek's Amended Complaint. Like the Engagement Letter, Socorro testified that he did not sign the Assignment and that his signature on the document is also an unauthorized forgery. [Exhibit D, Socorro Dep. 97:6-98:7] Also like the Engagement Letter, Wells Fargo has no record of receiving the purported Assignment prior to this dispute.

At his deposition as Stonecreek's Rule 30(b)(6) representative, Stonecreek's lone remaining principal, Bucelo, testified that he did not recall being present when Socorro, his erstwhile partner, signed the Engagement Letter and Assignment, and Bucelo could offer no explanation for Socorro's testimony that his purported signature was forged. [Exhibit C, Bucelo Dep. 8:3-19:8, Sept. 10, 2013].

Stonecreek has also shown a demonstrable lack of curiosity about these troubling developments. For example, during her recent deposition, Melton was even not questioned by Stonecreek's counsel about her purported signature on the Engagement Letter until the end of the deposition, when *she* volunteered that a copy of the document was provided to her in advance, and confirmed that she did not recognize the signature on the Engagement Letter to be her own, and had no recollection of ever signing the document. [Exhibit G, Melton Dep. 156:21-157:23]

Stonecreek's claims are based around the Engagement Letter and Assignment attached to its operative pleadings. According to Stonecreek, these two instruments established and govern the relationship between the parties, and create alleged rights that Stonecreek now sues to

enforce.[4] Whether these documents are forged and fabricated is not mere speculation or conjecture on the part of Wells Fargo. This information comes directly from the individuals who Stonecreek alleges signed the subject documents. Socorro denied signing them and testified that they are forgeries, and Melton has likewise rejected her alleged signature. Thus, sworn testimony has revealed that the two documents on which Stonecreek's substantive claims against Wells Fargo are based were fabricated for the purpose of this litigation.[5]

As the lone remaining principal of Stonecreek, Bucelo, appears to be the only person with a financial stake in the lawsuit.[6] Wells Fargo cannot yet prove exactly who forged the Engagement Letter and Assignment on Stonecreek's behalf. But that is of no consequence to the relief sought in this motion. The fact of the matter is that the documents *are* forged. Moreover, the only response Wells Fargo has received to these developments is a suggestion that it does not matter whether signatures on the Engagement Letter and Assignment are forged, because the parties performed the Engagement Letter as if it were executed. Stonecreek thus attempts to invoke the "performance" exception to the general statute of frauds as an excuse for a *fraud on the court*. That is ridiculous. The law is clear.[7] As explained below, when a party fabricates

---

[4] Even if the Engagement Letter and Assignment were not forgeries, they still create no liability to Wells Fargo on their face. [See DE 20]

[5] Not surprisingly, Stonecreek has confirmed to Wells Fargo that it cannot produce the original Engagement Letter for expert analysis.

[6] Wells Fargo has no evidence that Stonecreek's counsel was aware when this action was filed that the Engagement Letter and Assignment were forged and fabricated. That said, Stonecreek's counsel is now aware of these facts. Wells Fargo has conferred with Stonecreek and its counsel regarding this matter, and requested that Stonecreek voluntarily dismiss its lawsuit. This request was refused.

[7] Even if Stonecreek's counsel in this action was unaware, at the time the lawsuit was filed, that the Engagement Letter and Assignment were forged, its counsel, Mr. Shapiro, understands the ramifications of continued use of such forged evidence. In a prior, unrelated case, Mr. Shapiro's clients received the "ultimate" sanction of default judgment as to liability for all counts of the amended complaint for failing to produce "smoking-gun" documents during discovery, and for

evidence and abuses the judicial process in the manner attempted here, the ultimate sanction of dismissal with prejudice is not only warranted, it is the only appropriate remedy.

### III. Memorandum of Law

This court has the inherent power to impose the sanction of dismissal in response to abusive litigation practices, such as the fabrication of the very evidence that forms the substantive basis of Stonecreek's claims against Wells Fargo. The court's inherent power includes the power "to deny the court's processes to one who defiles the judicial system by committing a fraud on the court." *See Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989). *See also Vargas v. Peltz*, 901 F. Supp. 1572, 1579 (S.D. Fla. 1995) ("[C]ourts of this nation possess inherent power to regulate litigation and to sanction litigants for abusive practices."). A party commits "fraud on the court" when clear and convincing evidence demonstrates that "a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *See Vargas*, 901 F. Supp. At 1579 (citing *Aoude*, 892 F.2d at 1118).

In *Vargas*, the district court dismissed the plaintiff's case with prejudice and imposed other sanctions after the plaintiff fabricated evidence regarding her sexual harassment and retaliation suit. The plaintiff testified at her deposition that defendant had given her a pair of panties, and produced the undergarment at her deposition. *Id*. at 1574. Evidence was then produced showing that the panties were manufactured and sold after the date of the alleged

---

testifying falsely under oath. *See Qantum Commc'ns Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1270 (S.D. Fla. 2007).

harassment. *Id*. at 1574-75. This intentional misconduct in fabricating evidence justified dismissal of the action. *Id*. at 1581.

Similarly, in *Aoude v. Mobil Oil Corp.*, a plaintiff backdated a fraudulent purchase agreement in an attempt to force Mobil to accept a franchise transaction, a copy of which was attached to the complaint. 892 F.2d at 1116-17. When evidence of the fraud emerged, Plaintiff attempted to file a second suit, attaching the authentic agreement to the complaint. *Id*. The circuit court affirmed the district court's dismissal of the suit, finding that plaintiff's "odious machinations" constituted "fraud on the court." *Id*. at 1118-19.

Florida state courts have also upheld the sanction of dismissal where parties perpetrate a fraud on the Court. "It is well settled law that a party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding should not be permitted to continue to employ the very institution it has subverted to achier her ends. *See Metropolitan Dade County v. Martinsen*, 736 So.2d 794, 795 (Fla. 3rd DCA 1999) (Court reversed judgment on a jury verdict for plaintiff in personal injury case where plaintiff made untruthful statements in her deposition and in interrogatory answers.)

Moreover, courts have repeatedly held that merely excluding the manufactured evidence is insufficient. *See Pope v. Federal Express Corp.*, 138 F.R.D. 675, 682 (W.D. Mo. 1990) *aff'd in part, vacated in part on other grounds*, 974 F.2d 982, 984 (9th Cir. 1992); *see also Aoude,* 892 F.2d 1115. In *Pope*, the court held that dismissal was warranted where plaintiff used a fabricated handwritten note to substantiate her sexual harassment claim. 138 F.R.D. at 677. The court cautioned that "permitting the lawsuit to proceed would be an open invitation to abuse the judicial process. Litigants would infer that they have everything to gain, and nothing to lose,

if manufactured evidence merely is excluded while their lawsuit continues." *Id*. at 683. The *Pope* court noted that whether plaintiff herself fabricated the note was irrelevant:

> "[e]ven if plaintiff were not involved directly in manufacturing Exhibit 203, she should have known and recognized it as a forgery. Even if plaintiff and her counsel were too obtuse to recognize it as a forgery, they should have acknowledged the overwhelming evidence when confronted with it. Nevertheless, the charade continued aggressively, with repeated reliance upon the document."

*Id*. at 683.

Similarly, district courts for the Southern District of Florida have involuntarily dismissed a plaintiff's action for fraud on the court, where there was clear and convincing evidence that the documents on which plaintiff's claims relied were clearly fabricated. *See Benjamin v. BWIA Airlines & Caribbean Airlines*, No. 1:07-CV-20017-PAS (S.D. Fla. Jan. 13, 2009). While it was unclear in *Benjamin* that the plaintiff himself had fabricated the email contract and letter upon which his claims were based, plaintiff's "use of manufactured evidence in spite of clear evidence that the evidence is fabricated constitutes bad faith conduct and contempt for the judicial process." *Benjamin* at p. 14. Citing to *Aoude*, *Vargas* and *Pope*, the court stressed that merely striking the fraudulent documents was insufficient:

> "[A]llowing this case to proceed would permit Benjamin to seek justice by fraudulent means. Dismissal of a lawsuit, to be sure, is among the harshest of sanctions. However, the severity of the misdeed here compels such harshness. Merely striking Benjamin's fraudulent documents would not deter his misconduct. As stressed in *Pope*, striking the fraudulent documents would only invite litigants to introduce fraudulent evidence to the Court with the confidence that they could prosecute the case after the Court struck the fabricated evidence. To insure against abuse of the judicial process, the sanction of dismissal is warranted . . . ."

*Id*.

As this line of cases makes clear, courts must send a message to such malfeasors that it will not keep its doors open to those who, out of the gate, abuse the judicial system by presenting fraudulent evidence. The <u>use</u> of such manufactured evidence is, in of itself, sufficiently

egregious, regardless of who caused the forgery. Here, the integrity of the judicial system cannot be guaranteed where the two at-issue documents, the linchpin of Stonecreek's substantive claims, have been forged. Stonecreek's entire case rests on a false foundation. As was the case in *Pope* and *Benjamin*, in this case, dismissal does not hinge on whether Bucelo or someone else on Stonecreek's behalf forged the Engagement Letter and Assignment at issue. Stonecreek's continued use of the forged documents during the course of this litigation constitutes sufficient bad faith and contempt for the judicial process to warrant dismissal.

As explained by the Eleventh Circuit, a district court's inherent power to impose sanctions is "deeply rooted in the common law tradition." *See Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1447 (11th Cir. 1985). "It is beyond peradventure that all federal courts have the power, by statute, by rule, and by common law, to impose sanctions against recalcitrant lawyers and parties litigant." *Id*. This inherent power extends to parties as well as counsel. *See Chambers v. NASCO, Inc*. 501 U.S. 32, 43-46 (1991). Accordingly, in addition to dismissing this suit with prejudice, this Court has inherent power to, and under these circumstances should, sanction Stonecreek by awarding Wells Fargo all reasonable attorney's fees and costs it has incurred in this matter.

## Relief Requested

For all the foregoing reasons and authority, Wells Fargo respectfully requests the entry of an Order dismissing this lawsuit with prejudice for fabrication of evidence and attempted fraud upon the court, awarding Wells Fargo all attorney's fees and costs pursuant to the Court's inherent power, and any such other and further relief the Court deems appropriate.

## S.D. Fla. L.R. 7.1.A.3 Certificate of Conference

CASE NO. 1:12-cv-23850-MGC/TURNOFF

Wells Fargo's counsel conferred and attempted to confer with Stonecreek's counsel about the serious issues raised in this motion in good faith, to no avail.

Submitted this 23rd day of September, 2013.

**GRAYROBINSON, P.A.**
*Counsel for Defendant Wells Fargo Bank, N.A.*
401 East Las Olas Boulevard, Suite 1050
Fort Lauderdale, Florida 33301
Telephone: (954) 761-8111
Facsimile: (954) 761-8112

 */s/ Jay Thornton*
Jay Thornton
Florida Bar No. 323070
jay.thornton@gray-robinson.com
Christopher Johnson
Florida Bar No. 069329
chris.johnson@gray-robinson.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the **23rd** day of September, 2013, a copy of the above motion was served by Electronic Mail upon to: Jeffrey P. Shapiro, Esq., Shapiro & Ramos, P.A., 19 West Flagler Street, Suite 516, Miami, FL 33130, Email: jps@shapiroramos.com.

By: */s/ Jay Thornton*
GRAYROBINSON, P.A.

13