**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:12-cv-23850-MGC/TURNOFF**

STONECREEK – AAA, LLC,

     Plaintiff,

v.

WELLS FARGO BANK N.A.,

     Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

THIS MATTER is before me on Defendant Wells Fargo Bank N.A.'s ("Wells Fargo")
Motion to Dismiss Plaintiff Stonecreek – AAA, LLC's ("Stonecreek") Amended Complaint with
Prejudice.  Mot. to Dismiss, ECF No. 20.  I have reviewed the Parties' arguments, the record, and
the relevant legal authorities.  For the reasons explained in this Order, Wells Fargo's Motion to
Dismiss is denied.

## I. Background

The following facts are taken from the Amended Complaint.  Am. Compl., ECF No. 16.
On September 25, 2008, Wells Fargo entered into an agreement (the "Agreement") with Alfredo
Socorro ("Socorro"), as a "Trustee and/or assigns," to prepare, submit, and process a Federal
Housing Administration's application for mortgage insurance (the "Application").  *See id.* ¶ 5.
The Agreement was set forth in an Engagement Letter (the "Engagement Letter").  Engagement
Letter, Am. Compl., Ex. A.  Wells Fargo was to arrange for the placement of the resulting loan
after approval of the Application.  Am. Compl. ¶ 5.

1

Pursuant to the Agreement, Wells Fargo's loan committee had to first approve the Application and then send it to the United States Housing and Urban Development Office ("HUD") in Atlanta.  Letter from Wells Fargo, Am. Compl., Ex. F.  The Engagement Letter identifies the borrower as "a single asset entity acceptable to lender."  Am. Compl., ¶ 7, Ex. A.  Provision Four of the Engagement Letter says: "This application, and any subsequent commitment, is not transferable or assignable by the Mortgagor without prior written consent of Wells Fargo."  Am. Compl. ¶ 8, Ex. A.

The parties submitted the Application to obtain mortgage insurance for the rehabilitation and permanent financing of the Stone Creek Apartments in Atlanta, Georgia.  Am. Compl. ¶ 6.  Socorro was under contract to purchase ("the Purchase Contract") Stone Creek Apartments.  *Id*.  The Purchase Contract was subject to a financing contingency and a $300,000 non-refundable deposit was included ("the Purchase Deposit").  *Id*.

On September 30, 2008, Socorro executed two documents that purported to assign both the Agreement and the Purchase Contract to Stonecreek.  *See id*. ¶ 7; Ex. A; B.  Stonecreek alleges that Armando J. Bucelo, Jr. ("Bucelo"), President of Southern Units Corp., and Socorro were acting on behalf of Stonecreek throughout the Application process with Wells Fargo.  *See* Am. Compl. ¶ 2.  Southern Units Corp is the managing member of Stonecreek.  *See id*.

On October 21, 2008, Bucelo and Socorro signed the draft Supplement to Application ("the Supplement") on behalf of Stonecreek.  Supplement Application for a Multifamily Housing Project, Am. Compl., Ex. D.  Socorro and Bucelo named Stonecreek as the "Mortgagor Entity" and listed Stonecreek's Federal Employee Identification Number instead of their own personal Social Security numbers.  *See id*.

Stonecreek paid Wells Fargo $38,000 to prepare the Application.  Am. Compl. ¶ 13. Stonecreek, not Socorro or Bucelo, made payments directly to Wells Fargo for its services. Check from Stonecreek to Wells Fargo, Am. Compl., Ex. E.  Wells Fargo tendered a check made payable to Stonecreek to refund some of the advance payments that were made with respect to the Application.  Check from Wells Fargo to Stonecreek, Am. Compl., Ex. H.

Stonecreek avers that, in January 2009, Wells Fargo falsely represented in writing that it was 90% complete in its due diligence and that it found nothing to prevent submission to HUD. Am. Compl., ¶ 22, Ex. F.  Stonecreek further avers that, in April 2009, Wells Fargo falsely represented in writing (collectively, "the Written Representations") that it would receive an approval from HUD in 90 days.  E-mail Correspondence, Am. Compl., Ex. G.

Pursuant to the Purchase Contract, Stonecreek, through Socorro, had to tender the $300,000 Purchase Deposit.  Am. Compl. ¶ 6.  Stonecreek agreed that the Purchase Deposit would become non-refundable and that the deadline would be extended based on Wells Fargo's repeated misrepresentations by its top-level employees that the Application was "going to happen" and that the Application was a "done deal" (the "Verbal Representations").  *See id.* ¶ 22.

In May 2009, Wells Fargo decided not to proceed with the Application process.  *See id.* ¶ 21.  For the first time, Wells Fargo claimed that issues as to "market, noise, property age, conditions, and remaining physical life and credit as well as the overall weakness in the Atlanta multifamily rental market prevented the submission of the Application to HUD" ("the Claimed Excuses").  *See id.*  At that point, Wells Fargo had not completed the Application, submitted it to HUD, or attempted to purse alternate financing.  *See id.*

Stonecreek contends that, at some point during or after the Agreement was executed,

Wells Fargo decided that it no longer wanted to pursue the type of loan that was the subject matter of the Application.  *See id.* ¶ 68.  Stonecreek further alleges that well before May 2009, Wells Fargo knew that the Written and Verbal Representations were false because it already was aware of the Claimed Excuses.  *See id.* ¶ 23.  Allegedly, Wells Fargo concealed its true intentions to create the false appearance that although it stated that it had been performing under the Agreement, the Application was no longer viable and had to be abandoned.  *See id.* ¶ 69. According to Stonecreek, Wells Fargo used the Claimed Excuses to avoid paying significant damages for withdrawing from the Agreement.

Stonecreek claims that, as a result of Wells Fargo's breach, it lost the $300,000 purchase deposit, the $38,000 Application fee, and the projected $8 million value of the Stone Creek Apartment project.  *See id.* ¶ 13.

On September 24, 2012, Stonecreek filed an action in the Circuit Court for the Eleventh Judicial Circuit in Miami-Dade County, Florida.  Notice of Removal of Civil Action, ECF No. 1. On October 23, 2012, Wells Fargo removed the action to this Court.  *Id.*  On December 28, 2012, Stonecreek filed an Amended Complaint pleading nine counts: i) Breach of Contract – No Application Submitted; ii) Breach of Contract – Good Faith Best Efforts; iii) Fraud; iv) Negligent Misrepresentation; v) Negligence; vi) Constructive Fraud; vii) Breach of Fiduciary Duty; viii) Fraudulent Inducement Cover-Up Inducing Performance; ix) Fraudulent Inducement Based on Misrepresentations and Non-Disclosure.  Am. Compl. 4-23, ECF No. 16.

Wells Fargo seeks to dismiss Stonecreek's Amended Complaint under Federal Rules of Civil Procedure 12(b)(6) and 9(b).  Mot. to Dismiss, ECF No. 20.  Stonecreek has filed a Response to Wells Fargo's Motion.  Resp. to Mot. to Dismiss, ECF. No. 23.  Wells Fargo has

4

filed a Reply, as well as a Notice of Supplemental Authority in support of its Motion to Dismiss. Reply to Mot. to Dismiss, ECF No. 26; Notice of Filing Supplemental Authority, ECF No. 33.

## II. LEGAL STANDARDS

### A. Pleading Standards under Federal Rule of Civil Procedure 12(b)(6)

For the purposes of a motion to dismiss, my review is "limited to the four corners of the complaint" and any documents referred to in the complaint that are central to the claim. *Nationwide Advantage Mortgage Co. v. Fed. Guar. Mortgage Co.*, 09-20372-CIV, 2010 WL 2652496, at *2 (S.D. Fla. Feb. 26, 2010) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). A document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir.1999)).

A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that a plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Detailed factual allegations are not required, but a pleading "that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

When considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

**B. Pleading Standards relating to Fraud and Mistake under Federal Rule of Civil Procedure 9(b)**

A party must state with particularity the circumstances constituting allegations of fraud or mistake. Fed. R. Civ. P. 9(b). Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. *Id.* "Rule 9(b)'s heightened pleading standard may be applied less stringently, however, when specific 'factual information [about the fraud] is peculiarly within the defendant's knowledge or control.'" *Hill v. Morehouse Med. Assocs., Inc.*, No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003). Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir.1997)) (internal quotation omitted). Simply put, a plaintiff alleging fraud must plead "the who, what, when, and where [of the fraud] *before* access to the discovery process is granted." *Infante v. Bank of Am. Corp.*, 680 F. Supp. 2d 1298, 1302-03 (S.D. Fla. 2009) *aff'd*, 468 F. App'x 918 (11th Cir. 2012) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)) (emphasis in original). This rule requiring particularity serves an important purpose in fraud actions, "alerting defendants to the precise misconduct with which they are charged and

6

protecting defendants against spurious charges of immoral and fraudulent behavior." *Id.* (quoting *United States ex rel. Atkins v. McInteer,* 470 F.3d 1350, 1359 (11th Cir. 2006)) (citation omitted).

## III. ANALYSIS

### A. Stonecreek's Standing to Enforce Rights Under the Engagement Letter

Wells Fargo argues that the Amended Complaint should be dismissed with prejudice because Stonecreek does not have standing to sue.  Mot. to Dismiss 5.  Wells Fargo contends that Socorro entered into the Agreement in his individual capacity and not on behalf of Stonecreek. The Agreement does not name Stonecreek as a party and contains Provision Four, which requires prior written consent by Wells Fargo before any transfer or assignment of the Agreement may validly take place.  Wells Fargo argues that the Assignment of Engagement Letter that Socorro executed to Stonecreek is void because Wells Fargo did not consent to it in writing.

According to Stonecreek, it is the real party in interest.  Resp. to Mot. to Dismiss 2.  The language identifying Socorro as "Trustee and/or assigns" indicates that the intent of the parties was to benefit Stonecreek, even though Stonecreek was not actually a named party in the Agreement.  Moreover, Wells Fargo was aware that Socorro was acting on behalf of Stonecreek because it received money payments directly from Stonecreek, issued money reimbursements to Stonecreek, and its employees conveyed Written and Verbal Representations indicating that Stonecreek would benefit from the Application in the future.  Accordingly, Socorro did not need Wells Fargo's consent to assign the Engagement Letter, as required in Provision Four, because Wells Fargo knew Socorro was acting on behalf of Stonecreek and that Stonecreek was receiving the full benefit of the Agreement.

Under Florida law, a person who is not a party to a contract, is not mentioned in a

contract, or does not receive incidental or consequential benefit of a contract, does not have standing to sue for breach of that contract. *Biscayne Inv. Group, Ltd. v. Guarantee Mgmt. Servs., Inc.*, 903 So. 2d 251, 254 (Fla. 3d DCA 2005). Negotiations and dealings between the parties cannot modify a written contract to create an intent to benefit a third-party, when the lack of such intent is evident from the contract. *Jenne v. Church & Tower, Inc.*, 814 So. 2d 522, 525 (Fla. 4th DCA 2002); *Boat Town U.S.A., Inc. v. Mercury Marine Div. of Brunswick Corp.*, 364 So. 2d 15, 17 (Fla. 4th DCA 1978) ("[T]he language used in a contract is the best evidence of the intent and meaning of the parties."). However, if a contract is ambiguous on its face, a district court may not grant a motion to dismiss for failure to state a claim. *Novoneuron Inc. v. Addiction Research Inst., Inc.*, 326 F. App'x 505, 509 (11th Cir. 2009) (applying Florida law). "A contract is ambiguous where it is susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract." *See id* at 508.

I find that that the Agreement is ambiguous as to whether Socorro executed the Agreement in his individual capacity or on behalf of Stonecreek, thus precluding the dismissal of Stonecreek's claims for lack of standing. The Agreement reflects that Soccoro was executing the Agreement as a "Trustee and/or assigns," which supports Stonecreek's assertion that Soccoro executed the Agreement on his behalf. Stonecreek is also identified as the "Mortgage Entity" on the Supplement Application. Further, the Amended Complaint shows that Wells Fargo accepted money payments and issued reimbursements directly to Stonecreek and that representatives at Wells Fargo made representations to Socorro and Bucelo referencing Stonecreek and not, conversely, Socorro personally. Stonecreek, on the other hand, is not a named party and Provision Four of the Engagement Letter prohibited the Mortgagor from assigning the

Application to a third party without the written consent of Wells Fargo.   Additionally, the function of the Assignment of Engagement Letter is perplexing because there would be no need to assign to Stonecreek the Engagement Letter if Stonecreek already was the real party in interest. In light of these inconsistencies, the intent of the parties in the Agreement is unclear.

Construing the Amended Complaint and its exhibits in the light most favorable to Stonecreek and accepting all of its allegations as true, I conclude that the Agreement is susceptible of two different interpretations.  Accordingly, the issue of standing cannot be resolved at this stage and dismissal of the Amended Complaint for lack of standing is not warranted.

**B.  The Breach of Contract Claims (Counts I and II)**

Wells Fargo argues that the breach of contract claims (Counts I and II) must be dismissed because Socorro, failing to disclose his own prior negative credit and legal history on the Application forms, materially breached the Agreement, thus discharging Wells Fargo from its obligations under the Agreement.   Mot. to Dismiss 17-20.   Wells Fargo contends that the submitted Application contained false information and violated federal law.   As such, Wells Fargo continues, the Agreement is void.  Wells Fargo attaches to its Motion to Dismiss the docket and final judgment related to a lawsuit involving Soccorro.  Wells Fargo Mot. to Dismiss, Ex. A, *see also Halmos v. Bomardier Aerospace Corp.*, 404 F. App'x 376, 377 (11th Cir. 2010) (when considering a motion to dismiss, a court may consider materials that are publicly available).

Stonecreek argues that Socorro did not disclose his personal litigation history because he filled out the materials as Stonecreek's trustee and answered the respective questions with regard to Stonecreek.  Resp. to Mot. to Dismiss 17.

Both the Engagement Letter, containing a provision requiring the applicant to notify the

bank if it was involved in previous litigation, and the HUD Application, containing a "yes" or "no" query if the applicant had been a defendant in any suit or legal action, are attached to the Amended Complaint.  Engagement Letter, Am. Compl., Ex. A; Supplement Application for a Multifamily Housing Project, Am. Compl., Ex. D.

If Stonecreek is, in fact, a real party in interest to sue on the Agreement, Socorro's representations on the Application materials would be accurate.  Several points support Stonecreek's position: 1) on the first page of the Agreement the borrower is identified as a "single asset entity;" 2) the Supplement, prepared by Socorro and Bucelo, was created in Stonecreek's name as the "Mortgagor Entity," and lists Stonecreek's Employee Identification Number instead of Socorro's and Bucelo's Social Security numbers; 3) third party reports obtained by Wells Fargo were directed to, and performed in the named of, Stonecreek; and 4) Stonecreek made direct payments to Wells Fargo with respect to the Agreement.

Again, Stonecreek's standing as the real party in interest is central to this analysis.  Wells Fargo's arguments, insofar as they seek to dismiss the breach of contract claims due to Socorro's misrepresentations, cannot carry the day, as the issue of standing remains.

**C. The Tort Claims (Counts III-IX)**

Wells Fargo seeks to dismiss all tort claims for various theories that I will address in turn.

a. *The Economic Loss Rule and Common Law Contract Principles*

Wells Fargo argues that all seven of Stonecreek's tort claims are barred by the economic loss rule.  Mot. to Dismiss 7.  The economic loss rule generally holds that contract principles are more appropriate than tort principles for resolving claims of economic loss that do not accompany physical injury or injury to property other than that which is the subject of the contract.  *Excess*

10

*Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 208 F. Supp 2d 1310, 1315 (S. D. Fla. 2003). "Consequently, when the alleged duty breached is derived from the contractual relationship it cannot form the basis for a separate and distinct tort." *Id.* (quoting *Interstate Sec. Corp. v. Hayes Corp.*, 920 F.2d 769 (11th Cir. 1991)).   According to Wells Fargo, the tort claims should be dismissed under the economic loss rule because each of the underlying facts alleged in the Amended Complaint relate to Wells Fargo's performance under the Engagement Letter.

On March 7, 2013, after Wells Fargo filed its Motion to Dismiss, the Florida Supreme Court issued a ruling that receded from its previous decisions regarding the economic loss rule and limited its application to the products liability context. *Tiara Condo. Ass'n., Inc. v. Marsh & McLennan Co., Inc.*, 110 So. 3d 399, 407 (Fla. 2013) (Pariente, J., concurring).   Justice Pariente's concurrence in *Tiara Condominium* clarifies that the decision is "neither a monumental upsetting of Florida law nor an expansion of tort law at the expense of contract principles." *Id.* at 408. Justice Pariente's concurrence emphasizes that Florida law still holds that parties to a contract are limited to the remedies that have specifically been negotiated and that tort law may not supplant express contractual terms. *Id.*   Further, in order for a party to bring a valid claim in tort based on a breach of contract, the tort must be "distinguishable from or independent of the breach of contract." *Jeld-Wen, Inc. v. Nebula Glass Int'l, Inc.*, 05-60860-CIV, 2007 WL 5960207, at *6 (S.D. Fla. May 15, 2007) (citing *Lewis v. Gutharz*, 428 So. 2d 222, 224 (Fla. 1982)).

Wells Fargo acknowledges *Tiara Condominium* changed the economic loss rule and limits its application.  Reply to Mot. to Dismiss 4-5.  Wells Fargo contends that, although the economic loss rule does not apply here after *Tiara Condominium*, the tort claims fail because they relate to, and are not independent of, Wells Fargo's performance under the Engagement Letter.   Wells

11

Fargo argues that two major allegations underlie the tort claims: 1) Wells Fargo failed to properly and timely advise Stonecreek of the status of the Application, and 2) Wells Fargo concealed its decision not to submit the Application.  Wells Fargo further argues that these allegations plainly relate to the performance under a contract and are not separate and distinct of the breach of contract claims.

Nonetheless, it is premature to dismiss the tort claims at this stage in the lawsuit for two reasons.  First, as discussed above, if the breach of contract claims are dismissed on standing, Stonecreek's tort claims may hold.  Until the standing issue is resolved and Stonecreek's ability to sue in contract is settled, I will not dismiss the tort claims.

Further, even if Stonecreek has standing under the Agreement, it is premature to determine how distinguishable the tort claims are from the contract claims on the face of the Amended Complaint because the parties dispute the scope and interpretation of the actual terms of the Agreement.  In making reasonable inferences from the Amended Complaint in favor of Stonecreek, I will not dismiss the tort claims at this time.

b. *Pleading of Fraud or Negligent Misrepresentation with Particularity*

Wells Fargo seeks to dismiss the fraud, constructive fraud, fraudulent cover-up inducing performance, fraudulent inducement based on misrepresentations and non-disclosure, and negligent misrepresentation claims because they are not pled with particularity.  Mot. to Dismiss 10.  Wells Fargo contends that Stonecreek only pleads that certain representations were false, but does not plead how and why they were false. [1]

---

[1] Wells Fargo admits that in Count VIII, Stonecreek alleges how and why its representations were false.  There, the Amended Complaint alleges that Wells Fargo concealed its true intent not to submit the application to HUD to avoid being exposed to significant liability.

According to Stonecreek, Wells Fargo knew it was being dishonest when it made the representations about the Application.  Am. Compl. ¶ 22.  Furthermore, Wells Fargo intended to deceive Stonecreek and induce Stonecreek to act in reliance on the Written and Verbal Representations.  *See id.* at ¶ 23.

I find that Stonecreek pleads the fraud claims with enough particularity to withstand a 12(b)(6) dismissal.  *Ziemba*, 256 F.3d at 1194.  The Amended Complaint sufficiently annexes documents and references oral representations exhibiting the allegedly fraudulent conduct underlying Stonecreek's claims.  Am. Compl. ¶ 22 (showing what Wells Fargo said, verbally and in writing, that falsely represented the status of the Application to Stonecreek).  Stonecreek identifies the Wells Fargo officials that made the representations and the dates on which the representations were made.  *Id.* (naming individual employees and providing exhibits with dates of when the representations were made).  The Amended Complaint also contains exact reproductions of the allegedly false representations and describes how Wells Fargo knowingly made them with the understanding that Stonecreek would rely on them.  *Id.*  As a consequence of the alleged fraud, Wells Fargo obtained the $38,000 Application fee from Stonecreek.  *See id.* ¶ 26.  Accordingly, Stonecreek has pled its fraud with enough particularity to withstand a Rule 12(b)(6) dismissal.

c. *The Fraudulent Character of the Representations*

Wells Fargo argues that the fraud claims should be dismissed because Stonecreek does not allege actionable fraud.[2]  Mot. to Dismiss 12.  It contends that, even if the Written and Verbal

---

[2] Wells Fargo does not specify which of the fraud claims it seeks to be dismissed as part of this argument.  For the purposes of this Order, I will assume Wells Fargo seeks to dismiss all fraud claims.

Representations were, in fact, made, they were mere promises not performed or statements of opinion whereas actionable fraud must relate to facts.

"Under Florida law, 'to constitute actionable fraud, a false representation must relate to an existing or pre-existing fact.'" *Brake v. Wells Fargo Fin. Sys. Fla., Inc.*, 2011 WL 6719215, *9 (M.D. Fla. 2011) (citing *Cavic v. Grand Bahama Dev. Co., Ltd.*, 701 F.2d 879, 883 (11th Cir. 1983)).  As such, a false statement of opinion generally cannot constitute fraud.  *Id.*

Stonecreek alleges actionable fraud because it pleads that Wells Fargo issued false statements with the intention to mislead.  Stonecreek avers that Wells Fargo knew the representations were false at the time they were made because Wells Fargo was aware of and concealed the existence of the Claimed Excuses.  Am. Comp. ¶¶ 23; 31; 51; 68; 75.  Assuming the allegations in the Amended Complaint are true, I find that Stonecreek has appropriately alleged actionable fraud in its tort claims.

d. *Florida's Prohibition on Assigning Purely Personal Torts*

Wells Fargo seeks to dismiss the fraud and constructive fraud claims because as they are purely personal torts and as such, Socorro and Bucelo cannot assign them to Stonecreek.  Mot. to Dismiss 13.  Wells Fargo contends that because the false representations were made to Socorro and Bucelo, not to Stonecreek, Stonecreek may not sue on their behalf.

On the other hand, Stonecreek argues that the fraud was personal to itself because Socorro and Bucelo were acting in representative capacities.  Resp. to Mot. to Dismiss 14.  Stonecreek alleges that Wells Fargo was aware of Socorro's and Bucelo's positions and that it was clear that the real party affected by the fraud was in fact Stonecreek.

It is well-established Florida law that fraud is a personal, non-assignable tort.  *Maling*

14

*Corp. v. Ladan Corp.*, 85 So. 2d 607, 609 (Fla. 1956); *see also Weiss v. Johansen*, 898 So. 2d 1009 (Fla. 4th DCA 2005).  If Socorro and Bucelo were acting in representative capacities, and if Wells Fargo was aware of it, the fraud claims are personal to Stonecreek as Stonecreek was the party directly affected by the fraudulent behavior.  For these reasons, I will not dismiss the fraud claims at this time.

e. *Wells Fargo's Legal Duty to Stonecreek*[3]

Wells Fargo seeks to dismiss the negligence claim because Stonecreek fails to plead how Wells Fargo owed it any legal duty to properly and timely advise Stonecreek with respect to the HUD application process.  Mot. to Dismiss 13.  Wells Fargo contends that Socorro's assignment of the Engagement Letter is invalid to impute a legal duty on Wells Fargo because Wells Fargo did not consent to it.

Stonecreek argues that Stonecreek contracted with Wells Fargo because Wells Fargo held itself out as having superior skills in applying for mortgage insurance.  Therefore, Wells Fargo had a duty not to be negligent in making the allegedly false Verbal and Written Representations.  Resp. to Mot. to Dismiss 14.  Stonecreek further argues that it is a proper party to sue on the Agreement, as discussed above, and that it and Wells Fargo formed a relationship that created a legal duty of care.

Stonecreek must properly allege that Wells Fargo owed it a legal duty to maintain a claim for negligence.  *Zarella v. Pacific Life Ins. Co.*, 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010).  In

_____

[3] Wells Fargo presents two arguments based upon the legal duty element of a negligence claim. The first argument centers on Wells Fargo's alleged extra-contractual duty to properly advise Stonecreek with respect with the Application process, whereas the second legal duty argument, discussed in subsection *g*, addresses the legal duty banks owe to prospective borrowers.  I will address both arguments in the order presented in the Motion to Dismiss.

15

pleading a legal duty to maintain a negligence claim, "it is clearly established that one who undertakes to act, even when under no obligation to do so, thereby becomes obligated to act with reasonable care." *Nova Southeastern University, Inc. v. Gross*, 758 So. 2d 86, 89 (Fla. 2000).

I cannot conclude on that issue at this stage in the lawsuit. Nonetheless, the Amended Complaint does allege that Wells Fargo undertook to file the mortgage insurance application and that Stonecreek was the intended beneficiary. On this theory, because Wells Fargo undertook to act on behalf of Stonecreek, it must have done so with a reasonable duty of care.

However, Florida courts have rejected the contention that banks owe a legal duty to borrowers to process loans competently. *Brake*, 2011 WL 6719215 at *10. This argument is addressed below.

For these reasons, I will not dismiss the negligence claim on the face of the Amended Complaint.

### f. *Wells Fargo's Fiduciary Duty to Stonecreek*

Wells Fargo seeks to dismiss the breach of fiduciary duty and constructive fraud claims because Wells Fargo did not owe a fiduciary duty to Socorro, or by extension, to Stonecreek.[4] Mot. to Dismiss 14. Wells Fargo argues that Socorro was a prospective borrower, pursuing an arms' length creditor/debtor transaction, to which Wells Fargo owed no fiduciary duty. *Maxwell v. First United Bank*, 782 So. 2d 931, 934 (Fla. 4th DCA 2001) (reasoning that a typical

---

[4] The Motion to Dismiss does not specifically contend to dismiss the constructive fraud claim under this argument. However, as a breach of fiduciary duty claim and a constructive fraud claim are equivalent when based on misrepresentations or concealment, I will assume that Wells Fargo seeks to dismiss the constructive fraud claim as well. *Amoco Oil Co. v. Gomez*, 125 F. Supp. 2d 492, 509 (S.D. Fla. 2000) ("Florida courts hold that breach of fiduciary duty claims are the equivalent of constructive fraud claims when they are based on misrepresentations or concealment.")

16

relationship between bank and borrower yields no fiduciary duty).  Further, Wells Fargo argues that this was not a transaction where it was likely to benefit.

Stonecreek argues that the relationship between it and Wells Fargo was not of a typical creditor and debtor or lender and borrower.  Instead, Socorro, as Trustee, contracted with Wells Fargo to prepare a mortgage insurance application.  Wells Fargo was not engaged and was not paid fees to loan any money.  In fact, Wells Fargo did benefit from the transaction as Stonecreek paid it fees to process the Application.

"The relationship between bank and borrower is generally that of creditor and debtor, to which the bank owes no fiduciary duty."  *Maxwell*, 782 So. 2d at 934.  The fiduciary duty to disclose facts arises when a bank establishes a confidential or fiduciary relationship to a borrower and if the bank is likely to benefit from the transaction.  *Watkins v. NCNB Nat. Bank of Fla., N.A.*, 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993).  Within a bank and customer relationship, "a fiduciary owes to its beneficiary the duty to refrain from self-dealing, the duty of loyalty, the overall duty to not take unfair advantage and to act in the best interest of the other party, and the duty to disclose material facts."  *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 520 (Fla. 3d DCA 1994).

The Amended Complaint pleads sufficient facts to establish a fiduciary duty between Wells Fargo and Stonecreek.  Wells Fargo held itself out to have expert skills in mortgage insurance applications and advised Stonecreek throughout the process.  Am. Compl. ¶ 28. Consequently, Stonecreek was dependent upon Wells Fargo in all aspects of the Application, including whether to allow the Purchase Deposit to become nonrefundable.  *See id.* at ¶ 30. Stonecreek accepted that Wells Fargo was experienced and trusted it when making decisions

17

concerning the future loan.  *See id.* at ¶¶ 33-34.  Stonecreek sufficiently alleged that Wells Fargo intentionally withheld material information and breached its fiduciary duty to Stonecreek.  *MVB, Inc.*, 644 So. 2d at 520 (describing that a bank breaches its fiduciary relationship when it refrains from disclosing material facts to its customer).  Accordingly, the fiduciary duty and constructive fraud claims will not be dismissed.

g. *Wells Fago's Duty to Process Loan Applications with Reasonable Care*

Wells Fargo seeks to dismiss the negligence claim because it allegedly owes no legal duty to process loans with reasonable care.  Mot. to Dismiss 17.  Wells Fargo argues that under Stonecreek's theory, any business transaction that goes wrong could be subject to a claim for negligence, even when no duty of care exists.

In support of its negligence claim, Stonecreek asserts that its negligence claim is not based on a failure to process a loan application with reasonable care.  In fact, Stonecreek's dealings with Wells Fargo involved preparing, submitting, and processing a mortgage insurance application to HUD.

Federal courts applying Florida law have held that banks have no duty to process and consider loan applications with reasonable care.  *Brake*, 2011 WL 6719215 at *10; *Solver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d. 1330, 1339 (S.D. Fla. 2011) ("[T]here is no legal duty to process loans competently.").  However, the Florida law regarding processing loans competently does not apply because Wells Fargo was not engaged to process a loan but to file a mortgage insurance application.  Am. Compl. ¶ 5.  Thus, Stonecreek and Wells Fargo possessed a different relationship than a debtor and creditor.  For these reasons, Wells Fargo's argument about reasonable care in processing loan applications fails.

**IV. CONCLUSION**

For the reasons explained in this Order, Defendant Wells Fargo Bank N.A.'s Motion to

Dismiss, ECF No. 20, is **DENIED**.

**DONE and ORDERED** in chambers, at Miami, Florida, this 26th day of September 2013.


_____

MARCIA G. COOKE
United States District Judge

19